UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              Case No. 3:13-bk-2404-PMG

Coral Gale Court,

_____ Debtor.                       Chapter 7

Brian A. Court, as Successor Trustee
of the Alva Court Revocable Trust
Dated 11/7/2001,

                         Plaintiff,

vs.                                                 Adv. No. 3:13-ap-288-PMG

Coral Gale Court,

_____ Defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND MEMORANDUM OPINION

**THIS CASE** came before the Court for a final evidentiary hearing in this adversary proceeding.

The Plaintiff, Brian A. Court, as Successor Trustee of the Alva Court Revocable Trust Dated 11/7/2001, commenced the proceeding by filing a Complaint to impose an equitable lien on the Debtor's homestead real property. Generally, the Plaintiff alleges that the Debtor's homestead was constructed or improved with funds that were wrongfully withdrawn from the Trust.

1

In Florida, the constitutional homestead exemption is liberally construed in favor of protecting the family home. An equitable lien may be placed on a debtor's exempt homestead property only in cases where funds were obtained by fraud or egregious conduct and used to purchase or improve the property. Because of the exemption's constitutional basis, a claimant must satisfy a very high standard to impose an equitable lien on a debtor's homestead.

The high standard is not met in this case. Specifically, the Court cannot determine that the funds used to construct the Debtor's home were obtained from the Trust by fraud or egregious conduct, because the evidence does not clearly show that the withdrawals were misrepresented to the Trust, and because the funds were obtained under unusually difficult personal circumstances. Accordingly, the Plaintiff's request to impose an equitable lien on the Debtor's homestead should be denied.

## Background

The Debtor, Coral Gale Court, is a registered nurse, and was married to Gary Court. Prior to 2006, the Debtor and Gary Court acquired certain unimproved real property located at 28 Seascape Drive, Palm Coast, Florida (the Seascape Property). (Plaintiff's Exhibit 1).

Gary Court's mother was Alva-Ray Court. On July 22, 2006, the Debtor and Gary Court, as the Borrowers, signed a Note in the amount of $350,000.00 payable to Alva-Ray Court, Trustee of the Alva-Ray Court Revocable Trust dated November 7, 2001, as the Lender. Paragraph 7 of the Note provides:

> This Note has been executed in conjunction with the agreement of the Lender to make a loan to me from time to time under this Note. <u>The proceeds of the Note are intended to be used by me to construct a home</u>. No loan Agreement has been executed in this regard, however by acceptance of this Note the Lender agrees that an amount up to the sum of $350,000.00 will be loaned to me. Each request for funds under this Note shall be a draw. Lender agrees to provide to me the funds requested under a draw

2

>immediately after the request has been made. However, <u>in no event shall the principal balance owing under this Note ever exceed $350,000.00</u>.

(Plaintiff's Exhibit 2)(Emphasis supplied). As set forth in paragraph 7, the purpose of the loan was to enable Gary Court to construct a home on the Seascape Property. (Transcript, p. 61). According to the Note, the Debtor and Gary Court were to repay the loan in annual installments beginning on December 31, 2006, with a final payment due on the Maturity Date of December 31, 2010. (¶ 5).

In July of 2006, shortly after the execution of the Note, Gary Court became the trustee of the Alva-Ray Court Revocable Trust Dated 11/7/2001 (the Trust).

In 2006, 2007, and 2008, a series of checks were written from the Trust to a number of contractors and vendors related to the construction of the home. (Plaintiff's Exhibit 15). The cost to construct the residence exceeded the Note amount of $350,000.00, and the parties have stipulated that Trust funds in the additional amount of $233,054.88 were used to construct or improve the Seascape home. (Transcript, pp. 8, 18).

Construction of the residence was ultimately completed, and the Debtor and Gary Court began to occupy the Seascape residence as their home in late 2007. (Transcript, p. 47).

Gary Court died on February 13, 2009, and Brian Court became the successor trustee of the Trust. Brian Court is Alva-Ray Court's son, and Gary Court's brother.

In 2010, Brian Court, as Successor Trustee, filed an action against the Debtor in the Circuit Court for Flagler County, Florida, seeking repayment of the funds withdrawn from the Trust. On March 8, 2013, the Circuit Court granted the Plaintiff's Motion for Summary Judgment "as to Count I of the Amended Complaint for breaching the $350,000 Promissory Note."

On April 19, 2013, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. On her bankruptcy schedules, the Debtor claimed the Seascape residence as exempt homestead pursuant to article X, section 4 of the Florida constitution.

## Discussion

The Plaintiff objected to the Debtor's claim of exemption, and also filed a two-Count Complaint in the Debtor's bankruptcy case. Generally, the Plaintiff contends that the Debtor and Gary Court were only authorized to withdraw the sum of $350,000.00 from the Trust, in accordance with the terms of the Note, and that the withdrawals in excess of $350,000.00 were never authorized by Alva-Ray Court. Consequently, the Plaintiff seeks to impose an equitable lien or constructive trust on the Debtor's homestead to the extent of the excess withdrawals, which equal the sum of $233,054.88. (Transcript, p. 8).

### A. Homestead exemption

The Debtor resides in the Seascape home, and claimed the residence as exempt homestead on her bankruptcy schedules. Article X, section 4(a)(1) of the Florida Constitution provides in part:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead, . . . .

Fla. Const. art. X, §4(a)(1). Florida Courts have "long emphasized that the homestead exemption is to be liberally construed in the interest of protecting the family home." Havoco of America, Ltd. v. Hill, 790 So.2d 1018, 1020 (Fla. 2001). The provision "grants debtors a liberal exemption for homestead

4

property and a presumption arises in favor of the exemption." In re McClung, 327 B.R. 690, 693 (Bankr. M.D. Fla. 2005).

Article X, section 4(a)(1) contains only three exceptions to the protections provided by the homestead exemption: (1) for the payment of taxes and assessments; (2) for obligations contracted to purchase, improve, or repair the homestead; and (3) for obligations contracted "for house, field or other labor performed on the realty." Havoco of America, Ltd. v. Hill, 790 So.2d at 1022.

## B. Equitable exception for fraud or egregious conduct

Florida Courts have "invoked equitable principles to reach beyond the literal language of the exceptions" specifically provided by article X, section 4(a)(1), but the equitable exception generally applies "only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." Havoco, 790 So.2d at 1028.

Under the equitable exception, a homestead's exemption from forced sale does not apply to the extent that funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead. "In such cases, an equitable lien upon the property is a viable remedy for creditors." In re Hecker, 2008 WL 283282, at 3 (11th Cir.).

> The Eleventh Circuit Court of Appeals in their recent decision of *In re Chauncey*, 454 F.3d 1292, 1294 (11th Cir. 2006), explained when an equitable lien may be imposed under Florida law and concluded that only monies *obtained* through fraud or egregious conduct may permit the imposition of an equitable lien. . . . The key is how the monies were obtained, not how they were used. *In re Johnson*, 336 B.R. 568, 572 (Bankr. S.D. Fla. 2006)("It is now clearly established that the imposition of an equitable lien against homestead property is limited to those circumstances wherein the owner of the property has acquired proceeds by fraud or reprehensible conduct to either invest in, purchase, or improve the homestead.")(*citing Havoco of America, Ltd. v. Hill*, 790 So.2d 1018, 1028 (Fla. 2001)).

5

In re Cameron, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006)(Emphasis in original). In other words, "the homestead exemption does not shield homes purchased with funds obtained through fraud." C&M Investment Group, Ltd. v. Campbell, 2010 WL 1459735, at 2 (M.D. Fla.).

Exceptions to the homestead exemption, however, "should be strictly construed in favor of claimants and against challengers," with the result that a "high standard must be met to impose an equitable lien" on homestead property. In re McClung, 327 B.R. at 693.

> Courts imposing equitable liens on homestead property require a very high standard. *In re Diamond*, 196 B.R. 635, 639 (Bankr. S.D. Fla. 1996)("[W]hen homestead rights are in jeopardy, Florida law requires far more than a mere equitable basis for the imposition of an equitable lien because the homestead right is a constitutional, fundamental right."). Typically, an equitable lien is imposed upon homestead property only if the misappropriated funds are traced directly into the homestead and the misappropriation occurred due to fraud and reprehensible conduct. *Diamond*, 196 B.R. at 639.

In re Abrass, 268 B.R. 665, 683-84 (Bankr. M.D. Fla. 2001). The circumstances in which an equitable lien may be imposed are very limited, and an equitable lien is generally imposed only where it is established by competent proof that the debtor acquired the homestead by fraudulently-obtained funds or embezzlement. Dowling v. Davis, 2006 WL 2331070, at 3 (M.D. Fla.)(quoting In re Adell, 321 B.R. 562, 569-70 (Bankr. M.D. Fla. 2005), and In re Potter, 320 B.R. 753, 757 (Bankr. M.D. Fla. 2005)).

### C. Equitable lien

In this case, the parties have stipulated that funds in the amount of $233,054.88 may be traced from the Trust to the Debtor's homestead. (Transcript, pp. 8, 18). Additionally, the Debtor acknowledges that she has received the benefit of the homestead property that was constructed with the Trust funds. (Transcript, pp. 32, 57, 121). See In re Hecker, 2008 WL 283282, at 4(An "equitable

6

lien may be imposed upon property benefited by fraudulent proceeds even where one co-owner spouse is innocent and ignorant of the fraud.").

The high standard required to impose an equitable lien is not met, however, because the evidence does not clearly show that the withdrawals were misrepresented to the Trust, and because the funds were obtained under unusually difficult personal circumstances. Accordingly, the Court cannot determine that the funds used to construct the Debtor's homestead were obtained from the Trust by fraud or egregious conduct.

### 1. The evidence does not establish fraud.

As a general rule, a claimant in an equitable lien proceeding based on fraud must show that the debtor made a false representation with the intent to deceive the claimant. "To prove fraud under Florida law, a plaintiff must establish that the defendant made a 'deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff.'" Abrass v. White, 2003 WL 23009855, at 3 (M.D. Fla.)(quoting First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 539 (Fla. 1987)).

Similarly, an equitable lien based on breach of fiduciary duty or "constructive fraud" may arise from "misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." Hirchert Family Trust v. Hirchert, 65 So.3d 548, 552 (Fla. 5th DCA 2011)(quoting First Union National Bank of Florida v. Whitener, 715 So.2d 979, 982 (Fla. 5th DCA 1998)).

In this case, the individuals involved in the withdrawals from the Trust were Gary Court and Alva-Ray Court. Gary Court handled all of the financial records concerning the loan from the Trust and the construction of the Seascape residence. (Transcript, pp. 20-21, 26, 50, 108-09). Alva-Ray

7

Court was the beneficiary of the Trust and made the "ultimate decision" for the Trust to loan the construction money to Gary Court. (Transcript, pp. 60-62).

Gary Court died on February 13, 2009, and Alva-Ray Court died in July of 2012. (Transcript, pp. 50, 63).

The evidence does not show the content of the representations that occurred between Gary Court and Alva-Ray Court before their deaths. The Debtor did not participate in the conversations between Gary Court and Alva-Ray Court regarding the loan, and Brian Court lived in California while the home was under construction. (Transcript, pp. 34, 37, 69-70).

The testimony of the Debtor and Brian Court, however, indicates that Gary Court had been diagnosed with leukemia before construction of the home began, and that Alva-Ray Court approved Gary Court's initial loan request in order to help her son. (Transcript, pp. 60-62, 110). In fact, Brian Court was aware of the initial request for $350,000.00, and encouraged Alva-Ray Court to provide the loan to "help out Gary." (Transcript, p. 62).

Construction of the home extended over a period of eighteen months while Gary Court struggled with his health. (Transcript, pp. 24, 64). During this period, Alva-Ray Court lived near Gary Court in Florida, and Gary Court was in regular contact with his mother. (Transcript, pp. 21-22). Gary Court and Alva-Ray Court were the only individuals with direct knowledge of the statements made by Gary Court to his mother regarding his withdrawals from the Trust.

Under these circumstances, the Court cannot determine that Gary Court engaged in any fraudulent conduct in order to obtain the excess funds from the Trust. It appears that Gary Court and Alva-Ray Court sustained a good family relationship during the construction of the home and during Gary Court's illness, and that Alva-Ray Court had initially agreed to assist Gary Court with the construction

8

of the residence. The record does not include any evidence of specific misrepresentations or concealments made by Gary Court to Alva-Ray Court regarding the Trust funds, and Alva-Ray Court had the "authority and discretion" to amend the Trust during her lifetime. (Transcript, p. 66).

Finally, the Affidavit signed by Alva-Ray Court shortly before her death is not conclusive. In the Affidavit, Alva-Ray Court stated that she did not authorize Gary Court to withdraw any funds from the Trust in excess of the original $350,000.00 loan. (Plaintiff's Exhibit 12). The Affidavit was signed in April of 2012, more than three years after Gary Court's death, and was prepared in connection with a state court action against the Debtor. The Affidavit does not address whether Gary Court made any verbal representations to her regarding the excess withdrawals, or whether she had knowledge of the excess withdrawals while the home was under construction.

A party must satisfy a very high standard to impose an equitable lien on a debtor's homestead. The high standard is not met in this case. The Court cannot determine that the funds used to construct the Debtor's home were obtained from the Trust by fraud, because the evidence does not clearly show that Gary Court made any misrepresentations to Alva-Ray Court regarding the loan or otherwise took improper advantage of their relationship.

### 2. The evidence does not establish egregious conduct.

The equitable exception to Florida's homestead exemption applies only where funds were obtained by fraud or egregious conduct and used to purchase or improve the property. Havoco, 790 So.2d at 1028.

The Court in Havoco did not define the term "egregious conduct." The example of egregious conduct that is typically cited, however, involves a pattern of behavior in which the homeowner willfully refused to pay alimony for a prolonged period, had been found in contempt of court orders on

9

multiple occasions, and had not shown any willingness to comply with court orders in the future. Radin v. Radin, 593 So.2d 1231 (Fla. 3d DCA 1992)(cited in Robles v. Robles, 860 So.2d 1014, 1015 (Fla. 3d DCA 2003). See also Partridge v. Partridge, 912 So.2d 649, 650 (Fla. 4th DCA 2005)(Contemptuous conduct may constitute the type of egregious conduct that justifies an equitable lien.).

In this case, the egregious conduct asserted by the Plaintiff is Gary Court's withdrawal of Trust funds in excess of his Note amount without proper authorization from Alva-Ray Court. The allegedly egregious conduct, however, was not shown by the high standard required for the imposition of an equitable lien on the Debtor's homestead.

First, for the reasons discussed above, the evidence does not clearly show that the excess withdrawals were misrepresented to Alva-Ray Court, because no direct evidence exists of the communications that occurred between Gary Court and Alva-Ray Court during the construction of the residence. In other words, it is not clear that the excess withdrawals were made without Alva-Ray Court's knowledge or authorization.

Second, the evidence does not clearly show that the excess funds were obtained by egregious conduct, because the withdrawals were made under unusually difficult personal circumstances.

Gary Court was diagnosed with chronic lymphocytic leukemia in 2004, before the Note was signed, and he fought the disease throughout the construction of the residence. (Transcript, pp. 51, 56-57, 109-10). He died in February of 2009, approximately eighteen months after construction was completed. (Transcript, p. 110).

During the same period, the medical condition of the Debtor's son deteriorated significantly. According to the Debtor, her son suffered a brain stem tumor at a young age, and his health has

10

declined continuously since the original diagnosis and treatment. The son has seizures, cannot currently hear or speak, uses a wheelchair, and requires 24-hour care. His prognosis at this time is poor. (Transcript, pp. 51-54, 56, 107-08, 110).

Finally, Gary Court had never been involved with the construction of a home prior to the Seascape residence, and had "no prior experience" with construction finance. (Transcript, pp. 18, 25-26, 72). He initially requested the sum of $350,000.00 to construct the home, but the project cost "more than he thought" because of unexpected expenses. In fact, Gary Court informed the Plaintiff while the home was under construction that the project was "going over budget," and that he was trying to keep the expenses "in check." (Transcript, pp. 67-68).

Under these circumstances, the Court cannot determine that Gary Court's conduct in withdrawing the excess funds from the Trust was egregious. The initial loan in the amount of $350,000.00 was approved by Alva-Ray Court and Brian Court. During the construction period, Gary Court faced his own terminal illness and the serious, progressive illness of the Debtor's son. He lacked construction experience, and the project went "over budget" while it was in process. (Transcript, pp. 18, 61, 99). For these reasons, Gary Court's allegedly egregious conduct was not shown by the high standard required for the imposition of an equitable lien.

### D. Constructive trust

As an alternative legal theory to the imposition of an equitable lien, the Plaintiff also seeks the imposition of a constructive trust on the Debtor's homestead. To impose a constructive trust, four elements must be established:

> (1) a promise, express or implied; (2) a transfer of property and reliance thereon; (3) a confidential relationship; and (4) unjust enrichment.

Castetter v. Henderson, 113 So.3d 153, 155 (Fla. 5th DCA 2013). "A constructive trust generally arises to restore property to its rightful owner and to prevent unjust enrichment when it is against equity for a person to retain property obtained by fraud or other questionable means." In re Cameron, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006)(quoting In re Woolum, 279 B.R. 865, 869-70 (Bankr. M.D. Fla. 2002)).

Constructive trusts have been imposed against a debtor's homestead property under the equitable exception that is applied with respect to fraudulently-obtained funds. Hirchert Family Trust v. Hirchert, 65 So.3d at 551-52.

> We have invoked equitable principles to reach beyond the literal language of the [constitutional] exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.

Havoco, 790 So.2d at 1028. See Willis v. Red Reef, Inc., 921 So.2d 681, 684 (Fla. 4th DCA 2006). Because the remedy is an equitable exception to the constitutional homestead exemption, a high standard must be met to impose a constructive trust. See In re McClung, 327 B.R. at 693.

For the reasons discussed above, the evidence does not establish Gary Court's fraud or egregious conduct by the high standard required to apply an equitable exception to the Debtor's homestead. In this case, therefore, the Court cannot determine that the Debtor would be unjustly enriched by the allowance of her homestead exemption, and the Plaintiff's request for a constructive trust should be denied.

**Conclusion**

The Plaintiff, Brian A. Court, as Successor Trustee of the Alva Court Revocable Trust Dated 11/7/2001, commenced this proceeding by filing a Complaint to impose an equitable lien on the

12

Debtor's homestead real property. Generally, the Plaintiff alleges that the Debtor's homestead was constructed or improved with funds that were wrongfully withdrawn from the Trust.

In Florida, the constitutional homestead exemption is liberally construed in favor of protecting the family home. An equitable lien may be placed on a debtor's exempt homestead property only in cases where funds were obtained by fraud or egregious conduct and used to purchase or improve the property. Because of the exemption's constitutional basis, a claimant must satisfy a very high standard to impose an equitable lien on a debtor's homestead.

The high standard is not met in this case. Specifically, the Court cannot determine that the funds used to construct the Debtor's home were obtained from the Trust by fraud or egregious conduct, because the evidence does not clearly show that the withdrawals were misrepresented to the Trust, and because the funds were obtained under unusually difficult personal circumstances. Accordingly, the Plaintiff's request to impose an equitable lien on the Debtor's homestead should be denied.

Accordingly:

**IT IS ORDERED** that a Final Judgment on the Adversary Complaint for Declaratory Relief and the Imposition of a Constructive Trust and Equitable Lien shall be entered in favor of the Debtor, Coral Gale Court, and against the Plaintiff, Brian A. Court, as Successor Trustee of the Alva Court Revocable Trust Dated 11/7/2001.

DATED this __11__ day of __July__, 2014.

**BY THE COURT**

_____
PAUL M. GLENN
United States Bankruptcy Judge